## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ARTHUR C. JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:13-cv-414-MHT-PWG** |
| | ) | |
| **COFFEE COUNTY** | ) | |
| **COMMISSION,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER AND REPORT AND RECOMMENDATION

This is a race-based employment discrimination case. This lawsuit is brought by Plaintiff Arthur Johnson. The Coffee County Commission, as well as individuals James Kelley ("Defendant Kelley"), Randy Tindell ("Defendant Tindell"), and Carl Drummond ("Defendant Drummond") are named as Defendants (collectively "the individual Defendants"). Defendants Kelley, Tindell, and Drummond are sued in their individual capacity. (Doc. 41 at ¶¶ 4-6).

There are three counts in the Second Amended Complaint, which is the operative pleading. (Doc. 41). Count One alleges "racial discrimination" in contravention of 42 U.S.C. § 1981. Count Two alleges a violation of the Fourteenth Amendment and suggests a violation of the First Amendment and of 42 U.S.C. §

1

1981, and is brought through 42 U.S.C. § 1983. Count Three alleges retaliation in contravention of 42 U.S.C. § 1981 and is brought through 42 U.S.C. § 1983.

Before the court is Defendants' Motion for Partial Dismissal of Plaintiff's Second Amended Complaint (Doc. 43) and brief in support thereof (Doc. 44). Defendants seek to dismiss claims arising under unspecified "federal laws," the § 1981disparate impact claim, the § 1983 First Amendment claim, and § 1983 claims based solely on a theory of supervisory liability.  This Report and Recommendation does not address Plaintiff's claims not challenged by Defendants' motion for partial dismissal.[1]

## I.    JURISDICTION

Subject matter jurisdiction over Plaintiff's federal claims is conferred by 28 U.S.C. § 1331.  The parties do not dispute venue or personal jurisdiction, and there are adequate allegations in Plaintiff's Second Amended Complaint to support both. On November 25, 2014, this matter was referred to the undersigned by U.S. District Judge Myron H. Thompson for disposition or recommendation on all pretrial matters. (Doc. 36).  *See also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of*

---

[1] Defendants do not specify the claims not forming the basis of their Motion for Partial Dismissal.

*Georgia,* 896 F.2d 507 (11th Cir. 1990).

For the reasons stated herein, the Magistrate Judge **RECOMMENDS** that Defendants' motion to dismiss is due to be **DENIED** in part and **GRANTED** in part.

## II.    BACKGROUND AND FACTS[2]

Plaintiff is an African-American male and resident of Coffee County, Alabama. (Doc. 41 at ¶ 2). He is employed by the Coffee County Highway Department, which is owned, operated, managed and controlled by Defendant Coffee County Commission. (Doc. 41 at ¶¶ 2, 3). Defendant Kelley is the former Road Superintendent of the Coffee County Highway Department. He is a white male. (Doc. 41 at ¶ 4). Defendant Tindell is the Coffee County Engineer and "head" of the Coffee County Highway Department. He is a white male. (Doc. 41 at ¶ 5). Defendant Carl Drummond is the Road Superintendent for the Coffee County Highway Department. He is a white male. (Doc. 41 at ¶ 6).

Plaintiff began his career with the Coffee County Highway Department as a laborer in 2004. (Doc. 41 at ¶ 9). He was promoted to the position of Equipment Operator II in May 2007. (*Id.*). Plaintiff thereafter sought from his supervisors, defendants Kelly, Tindell, and Drummond, but was denied, pay increases and

---

[2]These are the facts for purposes of ruling on the pending motion to dismiss. They are gleaned exclusively from the allegations in the Second Amended Complaint.

promotions. He has specifically been denied promotion to Equipment Operator III. (Doc. 41 at ¶¶ 10, 16).

Plaintiff states that while he has been denied promotions and pay increases, white employees possessing less experience and training that he have received both promotions and pay increases, and that white employees have been hired at a higher rate of pay that than which he receives.  (Doc. 41 at ¶ 11, 16).  Plaintiff alleges that 29 of 32 positions within the  Coffee County Highway Department are held by white employees, and all supervisory positions are held by white employees.  (Doc.  41 at ¶ 12-13).

He further states that only one out of eighteen employees with the title of Equipment Operator III is not white, and that no African-American has been hired for or been promoted to that position since 1995. (Doc. 41 at ¶ 14). Plaintiff also alleges that the white employees who have been promoted to Equipment Operator III possessed less experience and qualifications than he. (Doc. 41 at ¶ 16).

Plaintiff avers that he has been subject to "disparate treatment in work assignments" and opportunities to earn overtime pay. (Doc. 41 at ¶ 16). Defendant further alleges that he has been subjected to on-the-job racial slurs and insults and "other racially motivated comments" by both supervisors and other employees, including "the regular and casual use of the 'N—' word." (Doc. 41 at ¶ 17)(alteration

4

in original).

Plaintiff claims he complained of his inability to secure a promotion or pay increases—while white employees received the same, and were hired at higher rates of pay— to Defendants Drummond, Tindell, and Kelly, yet no corrective action was taken. (Doc. 41 at ¶ 16). Plaintiff further states he complained of the verbal slurs to which he was subjected, but that the Defendants took no corrective action. (Doc. 41 at ¶ 17) .

On October 22, 2011, Plaintiff filed a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 41 at ¶ 18). Coffee County responded to the charge in December 2011, denying any race discrimination. (*Id.*). The EEOC issued a Notice of Right to Sue on February 29, 2012. (*Id.*). Plaintiff initiated this action on June 17, 2013. (Doc. 1).

Plaintiff alleges that following his filing of a charge with the EEOC, he was subjected to changes in his work assignments, restricted from consideration for promotions, and denied opportunities to earn overtime pay, all of which were afforded to employees who had not complained of racial discrimination. (Doc. 41 at ¶ 19). He claims that these actions were in retaliation for his filing an EEOC charge. (*Id.*).

## III.  MOTION TO DISMISS STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the Complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff."  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 663 (alteration in original) (citation omitted).

6

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

"So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. 558 (quoting 5 Wight & Miller § 1216, at 233-34 (quoting in turn *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Haw. 1953)) (alteration original). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

## IV.   DISCUSSION

### 1.   The unspecified "federal law" claims are due to be dismissed.

Plaintiff alleges in the Second Amended Complaint that Defendants' actions violated "federal law." (Doc. 41 at ¶ 30). Defendant is correct that claims purportedly based on "federal laws" not specifically identified in the Complaint are not properly before the court and are due to be dismissed as a matter of law.  *See* Federal Rule of Civil Procedure 8; *Roe v. Aware Women Center for Choice, Inc.*, 253 F.3d 678, 684 (11th Cir. 2001)("[A]t a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory.");  *Campbell v. Norton Co.*, 2004 WL 1305712, *1 (W.D.N.Y.  Jun. 9, 2004)("While the allegations in a Complaint are to be construed broadly, the Complaint must nevertheless specify a valid cause of action. Plaintiff's assertion that defendant [violated] unidentified state and federal laws is vague and overly broad, and does not give the defendant reasonable notice of the claims against it. If the plaintiff alleges that laws have been violated by the defendant's [actions], plaintiff must identify those laws. [...]).

### 2.   The First Amendment Claim.

Plaintiff alleges in Count Two that "Defendants' subsequent actions in

retaliation against Plaintiff were intentional and deliberate, and ... in violation of [P]laintiff's rights under the First and Fourteenth Amendments." (Doc. 41 at ¶ 30). Making a passing reference to the First Amendment in the midst of a § 1981 retaliation claim is insufficient to provide the Defendants with notice or to place the claim before the court. Indeed, this cavalier method of intermingling claims and substantive sources of rights, absent facts or even context, is a form of shotgun pleading, which makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. District Bd. of Trustees of Cent. Fla. Comm. College*, 77 F.3d 364, 366 (11th Cir. 1996)(alteration in original). *See also* Federal Rule of Civil Procedure 8. Even more concerning is the fact that this is Plaintiff's third iteration of his complaint.[3]

Moreover, this is the very sort of pleading that the Eleventh Circuit held insufficient in *Fullmer v. Graddick*, 739 F. 2d 553 (11th Cir. 1984), a case wherein conclusory and vague allegations, like those in the instant case, failed to meet pleading standards, even after amendment. The Eleventh Circuit explained:

> "A general issue, however, which arises repeatedly throughout this action is the effect of plaintiff's failure in many instances to provide any support for conclusory allegations set forth in his complaints, even after

---

[3] Indeed, as evidenced by Defendants' reply brief, Plaintiff's lack of context left the Defendants to guess whether the EEOC charge was the speech forming the basis for First Amendment claim.

amendment, and his responses to summary judgment motions. The Federal Rules of Civil Procedure require that a complaint contain a "'short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Even under the so-called notice rules of pleading, the complaint must state a cause of action sufficient to affirmatively show the plaintiff is entitled to relief, for

> [i]t is not enough, to indicate merely that the plaintiff has a grievance but sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery.
>
> 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 8.13 at 8–118 (2 ed. 1984) (citations omitted).

In civil rights ... actions, courts have recognized that more than mere conclusory notice pleading is required. In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. *See, e.g., Burnett v. Short*, 441 F.2d 405 (5th Cir.1971); *Guedry v. Ford*, 431 F.2d 660 (5th Cir.1970); *Granville v. Hunt*, 411 F.2d 9 (5th Cir.1969)."

*Id.* at 556-557. *See also Beck v Interstate Brands Corp.*, 953 F.2d 1275, 1276 (11th Cir. 1992)("Although the court must take the allegations of the complaint as true when reviewing motions to dismiss ... we are not permitted to read into the complaint facts that are not there.")(internal citations omitted); *Roe*, *supra*, at 683 ("[W]hile notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a

10

complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'(internal citations omitted)). *See e.g. St. Joseph's Hosp. v. Hosp. Corp. Of Am.*, 795 F.2d 948, 954 (11th Cir. (1986)("[T]he pleading must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.") (internal quotation and citation omitted). In making a mere passing reference to the First Amendment within a § 1981 retaliation claim, Plaintiff has provided no more than a conclusory allegation, from which neither the Court nor the Defendant can ascertain the true context or factual basis, much less whether there are allegations from which an inference can be made as to each element of the claim.

Additionally, Plaintiff's reference to the First Amendment does not satisfy the pleading standard set forth in *Twombly/Iqbal, supra,* as it fails to plead or even reference previously pled facts sufficient to draw the inference that Defendants are liable for misconduct arising to the level of a First Amendment violation. Plaintiff has identified neither the nature of his First Amendment claim nor the specific speech that he presumably contends was protected and on a matter of public concern, thus creating the exact scenario that notice pleading seeks to avoid. The First Amendment

claim is due to be dismissed.

Though Plaintiff's mere and conclusory reference to the First Amendment absent any factual context does not a claim make, and for that reason is due to be dismissed as a matter of law, it bears noting that assuming the claim had been sufficiently pled, Defendants have not specifically raised qualified immunity with regard to this claim.[4] To the extent Plaintiff intended his First Amendment claim to be brought through § 1983 (which is not at all clear) *and* assuming that Defendants intended their discussion of qualified immunity with regard to the §1983 supervisory liability claims to extend to Plaintiff's First Amendment claim (which is also not at all clear), *see* section IV of this Report and Recommendation, *infra*.

### 3.    The Disparate Impact Claim

Plaintiff purports to bring a §1981 disparate impact claim. In the facts section, he alleges as follows: "[T]he Commission has carried out a custom and practice in hiring and promotions that have a disparate impact on the ability of qualified African[-]American citizens to be employed and/or promoted in the highway department." (Doc. 41 at ¶ 15). He further alleges in Count One that "Plaintiff has

---

[4] No statement of general application is made with regard to the defense of qualified immunity. Defendants raise qualified immunity with regard to the § 1981 disparate impact claim (Doc. 44 at pp. 4-5) and with regard to the §1983 supervisory liability claims (Doc. 44 at pp. 8). There is no reference whatsoever to qualified immunity in the portion of Defendants' argument with regard to a First Amendment claim. (Doc. 44 at p. 3; Doc. 48 at pp. 1-2).

been discriminated against on the basis of race in violation of the Civil Rights Act of 1866 (42 U.S.C. §1981) . . . These unlawful discriminatory actions ... have had and continue to have a disparate impact on the [P]laintiff [...]." (Doc. 41 at ¶23).

In *Ferrill v. Parker Group, Inc., 168 F.3d 468, 472* (11th Cir. 1999), the Eleventh Circuit explained that a §1981 claim cannot be based on a "disparate impact" theory. It stated:

> Section 1981 liability must be founded on purposeful discrimination. See *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 389, 102 S.Ct. 3141, 3149, 73 L.Ed.2d 835 (1982); *Lincoln v. Board of Regents of Univ. System of Ga.*, 697 F.2d 928, 935 n. 6 (11th Cir.1983).
>
> A showing of disparate impact through a neutral practice is insufficient to prove a § 1981 violation because proof of discriminatory intent is essential. See *General Bldg. Contractors Ass'n*, 458 U.S. at 388, 102 S.Ct. at 3149 (recognizing that the drafters of § 1981 were not concerned with practices that were facially neutral); *Lincoln*, 697 F.2d at 935 n. 6. Accordingly, only direct or inferential modes of proving intentional discrimination are available to the § 1981 plaintiff. See *Larkin v. Pullman–Standard Div., Pullman, Inc*., 854 F.2d 1549, 1561 (11th Cir.1988), overruled on other grounds by *Swint v. Pullman–Standard, Inc.*, 493 U.S. 929, 110 S.Ct. 316, 107 L.Ed.2d 307 (1989) (where plaintiff proceeded on a theory of disparate impact, plaintiff is limited to Title VII and cannot seek the broader § 1981 remedies and longer liability period).

*Ferrill*, *supra*, at 472.  The §1981 disparate impact claim is due to be dismissed as a matter of law.

### 4.    The Supervisory Liability Claims

Defendants move to dismiss all of Plaintiff's claims brought through §1983 to the extent they are based upon a supervisory liability theory. Defendants first argue that the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) abrogated supervisory liability. This argument is neither persuasive nor supported in law. Indeed, the Hon. Justice Souter's dissenting observation that the *Iqbal* majority had "eliminated ... supervisory liability entirely" is but dicta and fails to support Defendants' assertion.  *Iqbal* at 693. Defendants cite no other controlling law that supports this argument or provides a basis for dismissal of the supervisory liability claims.

Defendants argue in the alternative that the supervisory liability claims against the "the Defendants"[5] are due to be dismissed because they are based on a *respondeat superior* theory. Defendants state: "[I]t appears that at least some of Plaintiff's claims—particularly those against the Commission—are not based on the

---

[5]  *See* Doc. 44 at pp. 5; 8. The Defendants fail to make clear which of Plaintiff's claims against the Commission are based on supervisory liability or which of those supervisory liability clams against the Commission it seeks to dismiss. The Defendants also fail to make clear which of Plaintiff's claims against the Individual Defendants are based on supervisory liability or which of those supervisory liability claims are due to be dismissed. Defendants simply lump  together "some" of Plaintiff's § 1983 claims against both the Commission and the Individual Defendants, state that they are supervisory liability claims and argue that they should dismissed as to both the Commission and the Individual Defendants because they are based on a *respondeat superior* theory. Moreover, Defendants intermingle arguments regarding why the claims against the Commission should be dismissed with arguments regrading why the claims against the Individual Defendants should be dismissed.

Defendants' own acts, but rather are based on Defendants' liability for the acts of others." (Doc. 44 at p. 8). The Defendants do not, however, identify which of "some" of Plaintiff's claims against either the Commission or the Individual Defendants brought through § 1983 are supervisory liability claims improperly based on a *respondeat superior* theory and are due to be dismissed.[6]  However inartfully pled the Plaintiff's Second Amended Complaint may be, Defendants have themselves placed the court at a significant disadvantage in performing its task of determining which of the claims against the Commission or Individual Defendants should be dismissed as a matter of law by virtue of being premised on *respondeat superior* alone.

## A. The Supervisory Liability Claims against the Commission

Though it is not entirely clear, Defendants argue in their motion to dismiss that the Plaintiff has failed to state "supervisory liability" against the Commission because "some" of the claims against the Commission are based on the Commission's liability for the acts of others.  (Doc. 44 at p. 8). Defendants argue in their reply brief that "Plaintiff's own Response demonstrates that his claims against the Commission are

---

[6] Defendants merely cite to paragraph 7 of the Complaint, which states: 'The individual defendants were agents and employees of the Coffee County Commission and the Highway Department, and the Commission is responsible and liable for the unlawful policies, practices, and customs complained of in this action. All defendants were acting under the color of state law at all time relevant to this action. (Doc. 41 at ¶ 7).  This does not explain which of Plaintiff's § 1983 supervisory liability claims Defendants contends are improperly based on a *respondeat superior* theory and should be dismissed.

based on nothing more that its status as his employer." (Doc. 48 at p. 6). Defendants do not describe which of Plaintiff's claims to which they are referring.

Defendants provide no explanation regarding which of the claims against the Commission are supervisory liability claims and which of those claims are based solely on the actions of others such that they amount to impermissible *respondeat superior* claims.  The Defendants have merely cited to law stating *respondeat superior* claims are insufficient to state a claim against a Commission. Though correct the Defendants may be in their statement of black letter law regarding *respondeat superior*, absent an identification of Plaintiff's claims made the basis of the argument or an explanation of *how* those claims as stated against the Commission are based on solely a *respondeat superior* theory (for instance, by identifying particular allegations in the Complaint which demonstrate that some, or even all, of the Plaintiff's "supervisory liability" claims against the Commission are based on nothing more than a *respondeat superior* theory), the argument is underdeveloped at this juncture and fails to dictate dismissal.[7]

Defendants argue that "because [Plaintiff] has not alleged facts to support a

---

[7]    No conclusion has been made at this stage regarding whether Plaintiff has stated a "supervisory liability" claim against the Commission, or that he will be able to after the conclusion of discovery. Defendants have simply provided the court with no basis to dismiss the claim.  This is not an invitation for Defendants to attempt to do so on the pleadings.  This matter can be addressed at summary judgment.

conclusion that the "Commission, as a body, acted with discriminatory intent in establishing some policy that violated his rights," or that "the Commission possessed the requisite knowledge of discrimination but failed to act," he has failed to state a claim for supervisory liability against the Commission. (Doc. 44 at p. 8). Even if the Defendants had identified which of Plaintiff's claims they are referring to, Defendants do not cite case law demonstrating that such allegations are necessary for a supervisory liability claim against the Commission, or that the presence of those allegations would transform an otherwise mere *respondeat superior* claim against the Commission into something cognizable. "[T]he onus is on the parties to formulate arguments" rooted in precedent binding on this Court and absent cultivated argument and supporting case law, this argument is too under-developed and devoid of supporting case law to dictate dismissal. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations and internal quotation marks omitted).

Though Defendants do not make this clear and cite no law, to the extent Defendants' argument is that Plaintiff's claims against the Commission are solely based on *respondeat superior* because he has not alleged facts to support the existence of a policy or custom,  a discussion is warranted.

It is correct that claims against a government entity such as a county commission may not be based on *respondeat superior*. *See Johnson v. Waters*, 970

17

F. Supp. 981 (M.D. Ala. 1997) (discussing liability against a county commission and stating: "Since a local government is liable only for constitutional deprivations that result from its customs, policies and practices, a plaintiff cannot rely on a theory of respondeat superior to impute liability on the governmental entity based upon the acts of one of its officials.)(citing *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018 1978). However, "[a] local government may be subject to liability under Section 1983 if the constitutional violation that a plaintiff complains of is caused by a 'policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officials.'" *Id.* (citing *Monell*, 436 U.S. at 690, 98 S.Ct. at 2036.). *See also Gallagher v. Geneva County Comm'n*, 2007 WL 2461896 at *2 (M.D. Ala. Aug. 29, 2007)("For liability to attach to a county, the county must have had a policy or custom which resulted in violation of a person's constitutional rights.")(internal citations omitted).

In his Second Amended Complaint, Plaintiff alleges thin, yet sufficient, allegations to support the existence of a policy or custom of race discrimination, dating back to 1995, such that the claims against the Commission, as analyzed at this juncture, are not based solely on *respondeat superior* and may proceed to discovery. (Doc. 41 at ¶ 4, 12, 13, 14, and 20).

18

### B.      The Supervisory Liability Claims against the Individual Defendants

Though not entirely clear until the Defendants filed their Reply brief, the Defendants argue that Plaintiff has failed to allege any facts to support the existence of a causal connection between "some" actions taken by Defendants in their supervisory capacities and the alleged discrimination suffered by Plaintiff. (Doc. 48 at p. 7).

While it is true that the Individual Defendants, as supervisors, cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on *respondeat superior* alone, the Individual Defendants can be held liable for subordinates' constitutional violations on the basis of supervisory liability. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir.2003). "Supervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir.1988)(internal citations omitted).

"A causal connection may be established by: 1) a 'history of widespread abuse' which puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy which results in deliberate indifference to constitutional rights; or 3) by facts supporting an

inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." *Carpenter v. Bell*, 2014 WL 7178417, *2-3 (N. D. Ala. Dec. 16, 2014)(citing *Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir.2006)(citing, in turn, *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir.2003)). "A single incident, or isolated incidents, do not ordinarily satisfy this burden." *Id*. (internal citations omitted).

In his Second Amended Complaint, Plaintiff alleges sufficient facts to support supervisory liability claims against the Individual Defendants:

- James Kelley is "responsible for .... the ... policies, customs, and practices of the Highway Department." (Doc. 41 at ¶ 4)

- Randy Tindell "was employed as the head of the Highway Department and as such, he is responsible for .... the ... policies, customs, and practices of the Highway Department." (Doc. 41 at ¶ 4)

- Carl Drummond is "responsible for .... the ... policies, customs, and practices of the Highway Department." (Doc. 41 at ¶ 4)

- "[J]ames Kelley, Randall Tindell, and Carl Drummond, acting as individuals and in their capacities as decision and policymakers for the Coffee County Commission, have caused the plaintiff to be denied promotions, work duties, training, support, compensation, and other employment benefits, supervisory opportunities, and promotional opportunities on account of his race; and, have retaliated against him on account of his complaints of their racially

discriminatory treatment. Defendant Coffee County Commission had knowledge of these impermissible actions on the part of Kelley, Tindell, and Drummond, failed to take appropriate and necessary action to prevent and/or correct them, and, in fact, ratified and participated in them." ((Doc. 41 at ¶ 20).

- "The Coffee County Commission, Kelley, Tindell, and Drummond have implemented and perpetuated a policy and practice of discrimination against African-American employees in the Highway Department, where twenty-nine of the thirty-two positions are held by white employees." (Doc. 41 at ¶ 12).

- "As a result of these discriminatory hiring and promotion policies and practices, all the supervisory positions in the Highway Department are currently held by white employees." (Doc. 41 at ¶ 13).

- "Additionally, all but one of the eighteen Equipment Operator positions in the Highway Department are currently held by white employees, and no African-American has been hired for or promoted to the position since 1995." (Doc. 41 at ¶ 14).

- "Although the plaintiff has been denied promotion to Equipment Operator III, as well as increases in pay, the defendants have promoted white employees with less experience and qualifications to that position, and have hired white employees at higher rates of pay than the plaintiff receives. The plaintiff complained of this disparate treatment to Drummond, Tindell, and Kelly, but no corrective action was taken.  The Plaintiff has also been subjected by the defendants to disparate treatment in work assignments and opportunities to earn overtime pay." (Doc. 41 at ¶16).

> • "Plaintiff, along with others of African-American descent, has been subject to ... racial slurs and insults, and other racially motivated comments and actions of his white supervisors, as well as by other employees. During the course of plaintiff's employment with the Coffee County Highway Department he has had to endure the regular and casual use of the "N—" word by Caucasian employees. Although plaintiff complained of these odious verbal slurs, no corrective action was instituted by the defendants." (Doc. 41 at ¶ 17)(alteration in original).

Though spare, Plaintiff's Complaint contains enough facts to plausibly allege claims against the Individual Defendants pursuant to a supervisory liability theory. Plaintiff allegations, taken as true at the 12(b)(6) stage, are sufficient to support an inference[8] that the Individual Defendants themselves participated in the acts that comprise the constitutional violation, i.e., the race discrimination. Plaintiff's allegations are also sufficient to support an inference that there is a history of widespread abuse—in the form of race discrimination in hiring and promotion practice dating back to at least 1995—such that the Individual Defendants were on notice of the need to stop an alleged deprivation, and they failed to do so. There are also sufficient facts alleged to support an inference that the Individual Defendants maintained customs or policies that resulted in deliberate indifference to the Plaintiff's

---

[8] The conclusion that the Plaintiff has met his pleading burden at the motion to dismiss stage is not a conclusion that Plaintiff's allegations prove that there is supervisory liability, but rather, that Plaintiff may proceed to the discovery phase on this question.  No conclusion is made or suggested as to Plaintiff's ability to prove his claims at summary judgment or trial.

constitutional rights and/or directed their subordinates to act unlawfully, or knew they would act unlawfully and failed to stop them from doing so.

Defendants make a passing reference, with little explanation, to qualified immunity in their argument that Plaintiff's supervisory liability claim is doomed.

> "Again, the fact that Defendants Kelley, Tindell, and Drummond, in their individual capacities, are entitled to qualified immunity is particularly significant in this regard, as Plaintiff has not shown that they violated his clearly established rights. Any claims based solely on supervisory liability are due to be dismisse[d]."

(Doc. 44 at p. 8).  However, this argument, which is stated in whole hereinabove, is too under-developed[9] at this time for a decision to made as to whether any of the Defendants are entitled to qualified immunity.  Thus, the issue of qualified immunity is reserved until the court has at its disposal a more-developed record. The motion to dismiss as to the §1983 supervisory liability claims is due to be denied.

---

[9] Other than a mere citation to one case on qualified immunity—without developed explanation— in their motion to dismiss (Doc. 43 at p. 3), Defendants' only other express reference to qualified immunity is in its argument that the disparate impact claims are due to be dismissed.  In that section, Defendant merely argues that when a Plaintiff "fails to put enough factual allegations in their complaint to allow the defendant officials or the court to adequately analyze the constitutional issues," that qualified immunity is due. (Doc. 44 at p. 4-5) To the extent Defendants intend that brief statement to also serve as a defense to Plaintiff's supervisory liability claim, the defense and the record are too underdeveloped at this time to provide a basis for dismissing the claim. Plaintiff has, for the purpose of a motion to dismiss, stated enough facts to state a plausible claim for supervisory liability such that discovery is allowed on the claim. No conclusion is made regarding whether, at the close of evidence, Defendants may be determined to be entitled to qualified immunity, and that issue is reserved until the court is provided with a more-developed record.

## IV.   CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that the Defendant's motion to dismiss (Doc.  43) be **DENIED** in part and **GRANTED** in part. The Magistrate Judge recommends that the following claims be dismissed: (1) purported claims arising under unspecified "federal laws," (2) the First Amendment claim contained in Count Two; and (3) the disparate impact claim contained in Count One.

It is **ORDERED** that Defendants' motion to strike Plaintiff's claims relating to unspecified "federal laws" (Doc. 44 at pp. 2-3) is **DENIED** as **MOOT**, given that those claims are dismissed, as set forth hereinabove on page 8 of this Report and Recommendation.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **August 7, 2015.**   Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by

the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 24th day of July, 2015.

/s/ Paul W. Greene
United States Magistrate Judge

25